# EXHIBIT 'A'

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Creative Group Acquisition Co., et. al. | |
| Debtors. | Case No. 13-12258 (KJC) |
| | (JOINT ADMINISTRATION REQUESTED) |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, AND 363 OF THE
BANKRUPTCY CODE AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (i) AUTHORIZING DEBTOR'S USE OF CASH
COLLATERAL, (ii) GRANTING ADEQUATE PROTECTION AND (iii) SCHEDULING
FINAL HEARING**

**("INTERIM CASH COLLATERAL ORDER")**

Upon the motion (the "Motion")[1] of Creative Group Acquisition Co. ("Creative") and

Creative Payment Processing, Inc. ("Processing") as a debtors and debtors-in-possession

(collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for entry of

an interim and final order under sections 105, 361, 362 and 363(c) of title 11 of the United States

Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); and the Local

Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a)

authorizing the use of Cash Collateral on an interim basis effective as of the Petition Date

through the time of the final hearing on the Motion (the "Final Hearing"); (b) granting and

affirming the adequate protection being given to the Lienholders; and (c) scheduling the Final

Hearing to consider entry of a final order (the "Final Order") authorizing the Debtors' use of

Cash Collateral; and upon the *Declaration of Ronald Kaplan in Support of First Day Motions*

*and Applications,* filed concurrently with the Motion; and the Court having found that the

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; and the Court having found that the Debtors' notice of the Motion and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court on September 9, 2013 (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY FOUND AND CONCLUDED THAT:

A.    <u>Disposition.</u> The Motion is granted on an interim basis in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled.

B.    <u>Commencement of Cases.</u> On September 3, 2013 (Creative) and September 6, 2013 (Processing), respectively, (the "Petition Dates"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are in possession of their properties and continuing to operate their business as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors (a "Committee") has been appointed in the Chapter 11 Case.

C.    <u>Jurisdiction and Venue.</u> This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief

sought herein are sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

D.    Adequate Notice.  On September 6, 2013, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules, the Debtors provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their respective counsel as indicated below: : (i) the United States Trustee for the District of Delaware (the "United States Trustee"); (2) the Debtors' twenty (20) largest unsecured creditors; (3) the United States Department of the Treasury, Internal Revenue Service; (4) the Office of the Attorney General of the United States (4) counsel for Community National Bank ("CNB"); (5) counsel for Signature Bank; N.A. ("Signature"), (6) the New York State Department of Taxation and Finance; (7) the New York State Department of Labor and (8) all parties who have requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable law, and no further notice relating to this proceeding and the hearing on this Motion is necessary or required.

E.    Prepetition Liens.

(i)    According to IRS notices and demands, Creative owes outstanding taxes to the IRS in the approximate amount of $_____ as of the Petition Date.  Pursuant to the Federal Lien Law, the IRS has a first priority lien upon all property acquired by Creative after the IRS perfected its lien.

3

(ii)      To secure the prepetition obligations to CNB under the Term Note and Revolving Note, Creative granted CNB first priority liens upon and in substantially all of Creative's assets, and all proceeds and products of such assets.

(iii)     To secure the prepetition obligations to Signature under the Subordinated Note, Creative granted Signature liens upon and in substantially all of Creative's assets and all proceeds and products of such assets.

F.    <u>Cash Collateral.</u>  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined in Bankruptcy Code section 363, in which the Lienholders have a lien or security interest (including any adequate protection liens or security interests), in each case whether existing on September 3, 2013, Creative's Petition Date, arising pursuant to this Interim Order, or otherwise. The Debtors stipulate and agree that all of the Debtors' cash, cash equivalents, negotiable instruments, investment property, and securities, including the cash, cash equivalents, negotiable instruments, investment property and securities in their deposit accounts, constitute Cash Collateral of the Lienholders.

G.    <u>Use of Cash Collateral.</u> The Debtors have an immediate and critical need to use Cash Collateral, to operate their business and effectuate a reorganization, which may include, among other reorganization strategies, a sale of substantially all of their assets, which will be used in accordance with the terms of this Interim Order (and any Final Order, where applicable) and subject to the Approved Budget (as defined below). Without the use of Cash Collateral, the Debtors will not have sufficient liquidity to be able to continue to operate its business.  The adequate protection provided herein and other benefits and privileges contained

herein are consistent with and authorized by the Bankruptcy Code, and to adequately protect the Lienholders' interests in the Prepetition Collateral. Absent authorization to immediately use Cash Collateral, the Debtors' estates and creditors would suffer immediate and irreparable harm.

H.    <u>Good Cause</u>.  Good cause has been shown for entry of this Interim Order. The Debtors have an immediate and critical need to use Cash Collateral in order to continue to operate their businesses in the ordinary course in accordance with the Approved Budget, preserve the value of the Debtors' business, and effectuate a reorganization, which may include, among other reorganization strategies, a sale of substantially all of their assets. The Debtors' use of Cash Collateral has been deemed sufficient to meet the Debtors' immediate postpetition liquidity needs, subject to the terms of this Interim Order and the Approved Budget. Good, adequate and sufficient cause has, therefore, been shown for the immediate grant of the relief sought in the Motion, as modified herein.

I.    <u>Good Faith</u>. Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Interim Order are fair, reasonable, are the best available under the circumstances, have been fully disclosed, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, have been negotiated at arm's length and in good faith and are in the best interests of the Debtors, their estates and the creditors.

J.    <u>Immediate Entry of Interim Order.</u>  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The Motion and this Interim Order comply with Delaware Rule 4001-2. The permission granted herein to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor, as required by Bankruptcy Rule 6003.  This Court concludes that entry of this Interim Order is in the best

interests of the Debtors' estates and creditors as its implementation will, among other things, allow for access to the liquidity necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business and further enhance the Debtors' chances for a successful restructuring, which may include, among other reorganization strategies, a sale of substantially all of their assets.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore:

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED THAT:

1.       Motion Granted. The Motion is granted on an interim basis, subject to the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062 and 9014.

2.       Authorization to Use Cash Collateral. Subject to the terms of this Interim Order, upon entry of this Interim Order, the Debtors are authorized to use Cash Collateral in which the Lienholders may have an interest, in accordance with the terms, conditions, and limitations set forth in this Interim Order and the Approved Budget.  Any dispute in connection with the use of Cash Collateral shall be heard by this Court.

3.       Approved Budget.  The budget annexed hereto as Exhibit A  (the "Approved Budget") hereby is approved.  Cash Collateral used under this Interim Order shall be used by the Debtors only in accordance with the Approved Budget and this Interim Order.

4.        Permitted Variance. Notwithstanding the Approved Budget, the Debtor

shall be authorized to use Cash Collateral in accordance with the Approved Budget, in an amount

that would not cause the Debtors to use Cash Collateral for operating disbursements in an

aggregate amount greater than one-hundred and ten percent (110%) of the operating

disbursements set forth in the Approved Budget for each weekly period (not including items

under the Approved Budget for payments to the Lienholders) (a "Permitted Variance"); provided

that if the aggregate amount of Cash Collateral actually used by the Debtors for any such weekly

period is less than the aggregate amount of Cash Collateral available for use by the Debtor under

the Approved Budget during such period, then for purposes of the Permitted Variance, the

Debtors may carry over any such unused amount to the future periods in the Approved Budget.

5.        Restriction on Use of Cash Collateral.  From and after the Petition Date,

no Prepetition Collateral or proceeds  thereof, including without limitation any of the Debtors'

existing or future Cash Collateral, shall directly or indirectly be used for any payments, expenses

or disbursements of the Debtors except for: (i) those payments, expenses and/or disbursements

that are expressly permitted under this Interim Order or other order entered by this Court and in

all cases which are consistent with the Approved Budget; and (ii) compensation and

reimbursement of fees and expenses payable pursuant to Bankruptcy Code sections 328, 330 and

331 to professionals or professional firms retained by the Debtor pursuant to Bankruptcy Code

sections 327, 328, 330, 331, or 503 (the "Debtor Professionals") and permitted and awarded

pursuant to an order of this Court.

6.        Adequate Protection. The Lienholders are hereby granted the following

Adequate Protection Obligations (as defined below), in each case to secure an amount equal to

the aggregate post-petition diminution in value (determined in accordance with Bankruptcy

Code section 506(a)), if any, in the interests of the Lienholders in the Prepetition Collateral (including the Cash Collateral), including without limitation any such diminution in value resulting in any manner from (a) the Debtors' use of the Prepetition Collateral; and/or (b) imposition of the automatic stay under section 362 of the Bankruptcy Code:

     (a)        valid, enforceable, nonavoidable and fully perfected, first-priority postpetition security interests in and liens (effective and perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) on any Collateral that is not subject to (i) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date; or (ii) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), provided that the Unencumbered Property shall not include causes of action under sections 544, 545, 547, 548 or 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

     (b)        valid, enforceable, nonavoidable and fully perfected, junior priority security interests in and postpetition liens (effective and perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) on all Collateral (other than property described in clause (a) or (c) of this paragraph 7) that is subject to (i) valid, perfected and unavoidable liens in existence immediately prior to the

8

Petition Date; or (ii) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Lienholders;

(c)          valid, enforceable, nonavoidable and fully perfected, first-priority postpetition security interests in and liens on all Collateral (other than the property described in clause (a) or (b) of this paragraph 7); provided, that such security interests and liens shall not prime: (i) any valid, perfected and unavoidable liens and security interests in existence immediately prior to the Petition Date that are held by or granted to any person other than the Lienholders; or (ii) valid and unavoidable liens and security interests in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Lienholders (collectively, with those liens described in clauses (a) and (b) of this paragraph 7, the "Adequate Protection Liens"); and

(d)          For purposes of this Interim Order, the term "Collateral" shall include, without limitation, any and all prepetition and postpetition property, assets and interests in property and assets of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or successor cases), and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtor (or any successor trustee or other estate representative in the Chapter

9

11 Cases or successor cases), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, whether existing prior to the Petition Date or arising after the Petition Date, including without limitation, all accounts, inventory, contracts, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment intangibles, machinery and equipment, real property (including all facilities), capital stock of each subsidiary of the Debtors, deposit accounts, commercial tort claims and other causes of action, Cash Collateral, and all proceeds of any of the collateral described above; provided, however, Collateral shall not include any claims, causes of action or rights of recovery arising under Chapter 5 of the Bankruptcy Code. The Adequate Protection Liens and Superpriority Claim shall be subject and subordinate only to Priority Liens and payment of the Carve-Out in accordance with the terms and conditions set forth in this Interim Order.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Lienholders hereunder is insufficient to compensate for any postpetition diminution in value of the interests of the Lienholders in the Prepetition Collateral during the Chapter 11 Case or any successor cases.

7.        Collateral Rights.

(a)              In the event that any party who has both received notice of the Interim Hearing and holds a lien or security interest in Collateral or Prepetition Collateral that is junior and/or subordinate to the Adequate Protection

Liens or the Prepetition Liens in such Collateral or Prepetition Collateral receives or is paid the proceeds of such Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral or Prepetition Collateral in trust for the Lienholders and shall immediately turn over such proceeds to the Lienholders.

(b)           If the Lienholders shall at any time exercise any of their rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations or the Prepetition Obligations, or to receive any amounts or remittances due hereunder, including, foreclosing upon and selling all or a portion of the Collateral (all solely to the extent not inconsistent with the requirements of this Interim Order), the Lienholders shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the Lienholders may determine. No holder of a lien shall be entitled to object on the basis of the existence of such lien to the exercise by the Lienholders of their rights and remedies under this Interim Order or other applicable law to effect satisfaction of the Prepetition Obligations or Adequate Protection Obligations owed to the Lienholders or to receive any amounts or remittances due hereunder. All proceeds and payments delivered to the Lienholders pursuant to this paragraph 16 may be applied to the Prepetition Obligations or Adequate Protection Obligations, and in no event shall the Lienholders be subject to the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise.

(c)        The Debtors shall not sell, lease, transfer or otherwise dispose of their interests in the Collateral outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the Lienholders.

8.        Successors and Assigns. The provisions of this Interim Order shall be binding upon the Debtors, the Lienholders, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Lienholders and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. The provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest including any official committee appointed in the Chapter 11 Cases.

9.        Binding Nature of Agreement. The rights, remedies, powers, privileges, liens, and priorities of the Lienholders under this Interim Order shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Chapter 11 Case, by the dismissal or conversion of the Chapter 11 Case or in any subsequent case under the Bankruptcy Code unless and until the Prepetition Obligations have first been indefeasibly paid in full in cash and completely satisfied in accordance with the Financing Documents.

10.        Priority of Terms. To the extent of any conflict between or among (a) the Motion, any other order of this Court, or any other agreements, on the one hand; and (b)

the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

11.        No Third Party Beneficiary. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

12.        Survival. Except as otherwise provided herein, (a) the protections afforded to the Lienholders under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any or all of the Chapter 11 Cases or (ii) converting any or all of the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code, and (b) the Adequate Protection Obligations shall continue in the Chapter 11 Case, in any such successor case or after any such dismissal. Except as otherwise provided herein, the Adequate Protection Obligations shall maintain their priorities as provided in this Interim Order and the Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of any or all of the Chapter 11 Case into cases pursuant to chapter 7 of the Bankruptcy Code or dismissal of any or all of the Chapter 11 Case, or by any other act or omission until the Prepetition Obligations are indefeasibly paid in full in cash or receive treatment as otherwise agreed to by the Lienholders, unless by further Order of the Court.

13.        Final Hearing Date. The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on September ____ , 2013 at ____ (as the same may be adjourned or continued by this Court) before The Honorable Kevin J. Carey, at the United States Bankruptcy Court for the District of Delaware.

14.        <u>Adequate Notice</u>. The Debtors shall promptly mail copies of this Interim Order, proposed Final Order and notice of the Final Hearing to the Notice Parties, any known party affected by the terms of the Final Order, and any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with this Court and served so as to be actually received no later than five business (5) days prior to the Final Hearing by the following: (a) DuffyAmedeo LLP, 275 Seventh Avenue, 7th Floor, New York, NY 10001, Attn. Todd E. Duffy, Esq., counsel to the Debtor; (b) Gellert Scali Busenkell & Brown, 913 N. Market Street, 10th Floor, Wilmington, DE 19811, Attn: Michael Busenkell; (c) counsel to any statutory committee appointed in the case; and (d) the Office of the United States Trustee.

15.        <u>Entry of Interim Order; Effect</u>. This Interim Order shall take effect and be fully enforceable nunc pro tunc to September 3, 2013 immediately upon entry hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in the Chapter 11 Cases.

16.        <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

17.        <u>Binding Effect of Interim Order</u>. The terms of this Interim Order shall be binding on any trustee appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code.

Dated:_____        _____
                                THE HONORABLE KEVIN J. CAREY

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

Creative Group Acquisition Co., et. al.

Debtors.

Chapter 11

Case No. 13-12258 (KJC)

(Joint Administration Requested)

### FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL

**THIS MATTER** having come before the Court on the motion (the "**Motion**")[1] of Creative Group Acquisition Co. ("Creative") and Creative Payment Processing, Inc. ("Processing") as debtors and debtors-in possession (the "**Debtors**") for entry of an interim and final orders (a) authorizing the use of cash collateral; (b) granting adequate protection to lien holders; and (c) scheduling a final hearing; and upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein,

**IT IS HEREBY FOUND:**

A.     On September 3, 2013 (Creative) and September 6, 2013 (Processing), filed a voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").

B.     As September 3, 2013, Creative owes outstanding taxes to the United States in the approximate amount of $2,998,378.22 as of its Petition Date  Of this total amount, notice was received and penalties assessed in the amount of $710,489.66 by notice from the IRS dated July 1, 2013 (the "IRS Tax Notice"), and Notices of Intent to Levy dated May 13, 2013 (in the amount of $462,647.04), May 13, 2013 (in the amount of $505,829.92); dated June 3, 2013 (in the amount of $482,021.23) and August 12, 2013 (in

---

[1]     All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

the amount of $1,598.19).  In addition, by notice dated July 22, 2013, the IRS asserted a tax liability against Creative for taxes due against Mantra in the amount of $486,046.40 and accessed a penalty in the amount of $349,745.99, for a total indebtedness of $835,792.39 Of this amount, notice was received and penalties assessed in the amount of $710,489.66 by notice from the IRS dated July 1, 2013, and Notices of Intent to Levy dated June 3, 2013 in the amount of $482,021.23 and August 12, 2013 in the amount of $1,598.19.  In addition,, by notice dated July 22, 2013, the IRS asserted tax liability against Creative for taxes due against Mantra in the amount of $835,792.39.

C.    As September 3, 2013, Creative owed approximately $5,174,041 to Community National Bank pursuant to (i) a term note in the original principal amount of $5,000,000 dated as of December 27, 2011; (ii) a revolving credit note in the original principal amount of $2,400,000 dated as of December 27, 2011; (iii) a guaranty agreement dated as of May 10, 2012.  In addition, Creative guaranteed the indebtedness of Mantra Graphics, LLC, a/k/a Indelible Agency, a related entity, related to a term note in the original principal amount of $500,000 dated as of May 10, 2012 and a revolving credit note in the original principal amount of $500,000 executed by Mantra Graphics, LLC (collectively, the "CNB Note").  The CNB Note is secured by a primary lien upon substantially all of Creative's assets.

D.    As of the Petition Date, Creative owed approximately t$1,906,750 to Signature Bank  pursuant to a subordinated note dated as of June 30, 2008 as amended pursuant to the amendment dated as of March 29, 2012  (the "Signature Note").  The Signature Note is secured by a lien upon substantially all of Creative's assets, however, that lien is subordinated to CNB's liens and security interests pursuant to a Subordination and Intercreditor Agreement dated as of December 27, 2011.

E.    The Debtors' use of cash collateral as authorized herein and as requested in the Motion, including the adequate protection for the IRS, is reasonable and necessary to preserve the value of the Debtor's assets and estates for the benefit of all creditors.

F.    The Motion,  proffers of testimony admitted into evidence at the hearing

and the Budget (defined below) establish to the Court's satisfaction that, after diligent consideration of all known circumstances, in its reasonable business judgment, that the Budget (defined below) is achievable and will allow the Debtors to operate in chapter 11 without the accrual of unpaid liabilities.

G.      This Court has jurisdiction to enter this Final Order pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2).

H.      On September __, 2013, the Court entered an Interim Order Authorizing Use Of Cash Collateral, Providing Adequate Protection And Setting A Final Hearing (Docket No. __) (the "**Interim Cash Collateral Order**").

I.       Proper and adequate notice of the Motion and the hearing in connection with the entry of this Order (the "**Hearing**") has been given pursuant to the Interim Cash Collateral Order and no other or further notice is necessary.

J.      No objections to the entry of this order were timely filed or otherwise received by the Debtor or the Court.

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

(a)      **Use of Cash Collateral**.  The Debtors are authorized, in accordance with the cash collateral budget (the "**Budget**") attached hereto as **Exhibit "A"**, to use cash collateral to make payments up to 110% of the amount set forth on any line item in the attached Budget, although if actual expenditures in a given week are less than what is budgeted, the unused portion for that line item may be carried over into ensuing weeks.  Notwithstanding the foregoing, with respect to obligations owing to any taxing authority, the payments may be made earlier than is projected in the Budget; provided that the overall payments do not exceed the amount budgeted for the term of the Budget without further Court order after notice and a hearing.  The Debtors may not expend more than what is authorized for any line item absent or further Court order after notice and a hearing.

2.    **Adequate Protection**.  As adequate protection for the Debtor's use of cash collateral:

(a)    The Debtors grant to the IRS, CNB and Signature, solely to the extent of any post-petition diminution in the value of the Prepetition Collateral, a post-petition security interest in and replacement lien upon the following: all present and future real and personal property of any of the Debtors' estates (other than causes of action arising under chapter 5 of the Bankruptcy Code), including all accounts (including post-petition accounts receivable arising post-petition notwithstanding the provisions of section 552 of the Bankruptcy Code), chattel paper, deposit accounts, documents, documents of title, goods (including all inventory, equipment and fixtures), instruments, investment property (including all certificated and uncertificated securities, securities entitlements, securities accounts, commodity contracts and commodity accounts), letter of credit rights, money, and general intangibles, all supporting obligations and security for any of the foregoing and all proceeds of the foregoing (including all distributions made on account of any of the foregoing, all claims arising from the loss, nonconformity, or interference with the use of, or defects or infringement of rights in, any of the foregoing and any insurance payable by reason of any such loss, nonconformity, interference, defects or infringement) (collectively, the "**Post-Petition Collateral**"), which security interests and replacement liens with respect to the Post-Petition Collateral shall have priority over all existing and future liens and encumbrances on such property, and (b) existing liens on or security interests in any specific items of equipment which is (or are) the subject of a pre-petition lease between the Debtor and a third party, but only to the extent such liens (or security interests) were duly perfected pre-petition.  For the avoidance of doubt, the security interests and replacement liens granted to the IRS, CNB and Signature hereunder shall secure the obligations of the Debtors to the IRS, CNB, and Signature solely to the extent of any post-petition diminution in the value of their respective Prepetition Collateral, whether resulting from the Debtors' use of cash collateral or otherwise.  A determination of the amount of post-petition diminution in the value of the Prepetition Collateral shall be determined either by agreement between the Debtors

and the IRS, CNB or Signature (respectively) or by Court order, after notice and a hearing.

(b)    The Debtors shall maintain and insure the Prepetition Collateral and Post-Petition Collateral in accordance with the requirements of the CNB Note and the Signature Note.

3.    **Administrative Priority Claim**.    To the extent that the adequate protection provided herein fails to protect any Lienholder against any diminution in the value of the Prepetition Collateral, that Lienholder shall be entitled to an administrative expense claim pursuant to section 507(b) of the Bankruptcy Code with priority over any and all other administrative expense claims of any kind (other than causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof) payable or allowed pursuant to any provision of Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 503(b), 507(a) and 507(b) of the Bankruptcy Code, provided that Lienholder agrees to subordinate any section 507(b) claim to the fees payable pursuant to 28 U.S.C. § 1930 to the extent such fees remain unpaid.

4.    **Default Hearing**.    In the event the Debtors default or violate this Order, the Lienholders are entitled to request a hearing within five (5) days (or if immediate and irreparable injury, loss or damage may occur, an emergency hearing within 48 hours).

5.    **Challenge Period**.

(a)    The Committee shall have 120 days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of the order approving the appointment of counsel to the Committee within which to file an objection or commence a contested matter or adversary proceeding (as may be appropriate) on behalf of the Debtors or the estate with respect to any Lienholder's prepetition claim, liens or security interests, or any other claims or causes of actions (including, without limitation, claims and causes of action arising under chapter 5 of the Bankruptcy Code) as to that Lienholder.    In the event that no such objection, contested matter or complaint is filed prior to the Challenge Period Termination Date, (a) the Debtors' stipulation to the nature, extent and validity of the claims, security interests and liens of in paragraph (G) above shall become final and binding on all

parties (including the Committee, any creditor, or any subsequently appointed trustee); (b) the claims, security interests and liens of the Lienholders shall be conclusive and binding upon all parties in interest in these cases and in any superseding chapter 7 cases, including any subsequently appointed trustee, as a legal, valid, binding, enforceable and fully-secured claim, subject to section 506(a) of the Bankruptcy Code, that is not subject to offset, counterclaim, equitable subordination or other defense or claim for conduct or acts prior to the date of the Interim Order.

       (b)    If no Committee is appointed, any party in interest has a minimum of 135 days (or a longer period for cause shown before the expiration of such period) from the entry of this Order to investigate the Lienholders' prepetition claim, liens or security interests and file a motion seeking authority to bring any appropriate proceedings as representative of the Debtors' estates.

      6.    **Immediate Effect.**  Order shall be effective immediately upon its entry.

Dated:_____

                     _____

                     THE HONORABLE KEVIN J. CAREY